# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed January 24, 1906.

CHARLES R. SCHIRM
VS.
LEOPOLD H. WIEMAN.

*J. Cookman Boyd* for plaintiff.
*Miles & Morris* for defendant.

SHARP, J.—

This is an action of assumpsit. The declaration contains the common counts and a special count on a check. The latter alleges "that the defendant on the 4th day of April, 1905, by his check of even date promised to pay to the plaintiff $300 on demand, and that the check was presented at the Drovers and Mechanics' National Bank for payment, but that said check was dishonored, and said check was not then, or any time since, or any part thereof paid, and payment thereon was stopped, and that the defendant had due notice thereof."

The defendant pleads the general issue.

The defense at the trial was that the check was without consideration, having been given for an illegal consideration and in the course of an illegal transaction, viz.: As payment for the delivery of a watch stolen from the defendant.

It was not distinctly charged that the plaintiff took the watch, but this inference was constantly suggested during the trial. The defendant in his testimony constantly made use of such expressions as he "had made up his mind who had taken the watch from the moment it was taken," and that he "had his suspicions," etc.

On cross-examination he refused to tell the persons towards whom his suspicions were directed or his reasons for such suspicions. Under pressure he was finally reluctantly induced to make the equivocal statement that he did not accuse anybody of taking his watch, and that included Mr. Schirm.

The circumstances under which the defendant's watch was stolen were as follows: In July, 1903, the defendant, with a number of acquaintances, members of the Order of Elks, was attending a convention of that Order in Cincinnati. On the night of July 19th, after witnessing some ceremonies of the Order, the defendant about 12.30 retired. After taking off his clothes he took his watch, a valuable Joergenson repeater, and placed it in the pocket of his trousers, which he folded and laid on a chair. The defendant said in his testimony there was a passage between the bed and the chair. There were a large number of persons in the hotel. Six persons had been assigned to the room in which the defendant slept, but four only slept in the room. They were the defendant, the plaintiff, Captain Nelson and Mr. Gomprecht. When the defendant retired the plaintiff was already in bed—the others came in afterwards. The defendant left the door unlocked in order that the others might enter without disturbing those already in the room. The defendant does not know when the others came in; they were in the room in the morning when he awoke. He does not know whether the door was locked at all.

So far as the defendant knows only one person, a servant with ice water, entered the room after he did. About seven o'clock the following morning, when those in the room started to dress, the defendant found his trousers were not on the chair on which he had placed them. He searched for them and found them under the bed. The watch had been removed from the heavy gold chain and was gone, the chain with the charm attached were not taken. Captain Nelson and Mr. Gomprecht also complained that they

had been robbed, but what was taken does not appear.

The plaintiff said that he was glad he had not been robbed, he had taken the precaution to lock all his valuables in his valise.

The door being unlocked, there was nothing to prevent anyone entering the room at will. After the defendant had retired, two of his companions, Captain Nelson and Mr. Gomprecht did, in fact, enter the room and retire without arousing the defendant or his becoming conscious of their presence.

A crowd of well-to-do people, such as attended the convention referred to invariably attracts numbers of professional thieves. It is most unreasonable to suspect either of the respectable gentlemen who occupied the same room with the defendant, with having stolen his watch. It was most negligently put in a very insecure place, on a chair in a room with the door unlocked, in a hotel crowded with guests and servants, at a time when a number of professional thieves might be expected to be in the vicinity. The plaintiff's connection with the recovery of the watch has, I am satisfied, been truthfully explained.

On a careful consideration of the testimony, as I heard it, at the trial and from a review of it since from the stenographer's notes I have reached the conclusion that the charge suggested at the trial that the plaintiff took the defendant's watch is without the slightest foundation. This branch of the case may be dismissed without further consideration.

Much more difficult questions arise in connection with the recovery of the watch.

The police were notified, and every effort was made by them to recover the watch without success. The defendant heard nothing regarding his watch until December, 1904. In that month the late William P. Lyons, head of the private detective firm of Smith, West & Lyons, told the plaintiff that the defendant's watch was still in existence, and was in the possession of parties in New York, who would surrender it for a certain sum. Mr. Lyons, who was well acquainted with both the plaintiff and the defendant, asked the plaintiff to act as his attorney, and conduct negotiations for the payment of the sum demanded, and the return of the watch. Mr. Lyons insisted that

he be not known in the matter. He did not tell the plaintiff, nor did the plaintiff know who had the watch.

The plaintiff sought the defendant, and there was some conversation between them concerning the return of the watch, but no agreement was reached at that time.

Subsequently, in the latter part of March, negotiations were resumed at the instance of the defendant, and an agreement was reached early in April, whereby the defendant agreed to pay $300 for the return of his watch. There was no stipulation to compound the felony, nor, on the other hand, to aid in the discovery and prosecution of the thief. An appointment was made for April 4th, 1904, for the consummation of the transaction. Mr. Lyons got the watch from the parties in New York and had it in his possession. The plaintiff and defendant met at the plaintiff's office to conclude the matter. The defendant tendered a check for $300 payable to the plaintiff. The plaintiff said the parties who had the watch would not accept the check. The defendant said he paid all bills by check, and objected to paying the money. He objected to parting with his money until he had possession of the watch and an opportunity to examine it. The plaintiff thereupon took the check to his own bank and had it cashed, and took the money to Mr. Lyons, got the watch and delivered it to the defendant. This was about noon. At 2.50 the defendant stopped payment of the check at his own bank. The defendant insists that the check was not given as a trick, but in good faith with the expectation that the check would be paid. His action in stopping payment was an after thought and taken in consequence of advice received first from some of the officials of the bank, and afterwards approved by his counsel.

I am satisfied that prior to this time no charge had been made that the plaintiff had taken the watch, nor was he aware of the fact that he was suspected of taking it. He says he thought he was doing the defendant a favor in recovering his watch for him. He supposed he had been employed by Mr. Lyons on account of his acquaintance with the defendant.

The plaintiff now sues on the check.

There can be no doubt the watch was stolen, and the plaintiff had reason to

know this fact. He had been informed in Cincinnati the watch had been stolen, and had been told by Mr. Lyons that it was the watch stolen from the defendant which was to be returned.

It is contended by the defendant that the agreement to pay $300 was null and void, that an agreement to pay for the return of stolen property is without consideration, illegal and void.

A contract to pay a thief for the return of stolen property is void for want of any consideration. It is the duty of the thief to return the stolen property, and no consideration will be raised out of his action in doing so. Any promise to pay him, therefore, would be null and void. Moreover, such an agreement would be void, because it is contrary to public policy, being an incentive to crime.

It is said there is a difference between a promise made to a thief and one made to an innocent holder of an article stolen, for instance an innocent purchaser. But this is immaterial so far as this case is concerned. I do not think the holder of this watch was an innocent purchaser. The theft, the inscription on the watch containing the defendant's name and information from which his residence could be readily ascertained, the secrecy maintained by the parties concerning their identity, the pledge of secrecy exacted by Lyons establish prima facie, at any rate, the fact that those who had the watch were not innocent purchasers. The presumption from these facts is that the party in New York was a thief with knowledge that the property was stolen.

Leaving the check out of consideration for a moment and looking only at the previous agreement, the real parties were the defendant and the parties in New York. The position of the plaintiff was merely that of an agent. He had no personal aims to serve in the negotiations, but his object was merely to bring the parties together. This being true, he may be left out of consideration, and the case treated as an agreement between the defendant and the parties having possession of the watch. It was an agreement to pay persons who had stolen or held stolen property with knowledge it was stolen, to restore the property on the payment of $300. Such an agreement is null and void.

Though this appears plain on principle, the authorities are not numerous.

6 Encyclopaedia of Law, 406; 24 Encyclopaedia of Law, 955; Jenkins vs. Kelren, 2 Gray, 330; Harsen vs. Doe, 38 Me., 45; Bledsoe vs. Jackson, 4 Sneed, 429.

It is contended for the plaintiff that an agreement to pay for the return of stolen property is valid if there is no stipulation to compound the theft, and a number of cases were cited in support of this contention.

A distinction must be made between the promise of the thief and that of the person whose property has been taken. The promise of the former is valid. It is his duty to return the property and no considerations of public policy prevent his making an agreement to do so and giving security for its performance. The cases cited by the plaintiff's counsel were of this character. In every case it appears that the obligation sued on was an obligation executed by the thief.

But the promise of a party whose property is taken is governed by different considerations. It would be an inducement to crime, contrary to public policy to permit a recovery on the promise of the owner of property to pay the thief or an accessory.

It is quite clear, therefore, that on the original agreement, there could be no recovery.

Does the giving of the check alter the case? It was contended that the plaintiff in this transaction was the agent of the defendant. This contention is not well founded. It is true the original negotiations had terminated without result, and that the defendant in the later transaction took the iniative. He sought the plaintiff, but he sought him as the agent of the party having the watch. The plaintiff regarded Lyons and his principals as his clients, and at a later date received his compensation from them. The check was not given to the plaintiff in his individual right; the defendant was under no obligation to pay him anything personally. His principals had the watch and were to receive the money. The check was given him in his capacity of agent. It cannot be maintained as a matter of fact that he advanced the money as a loan to the defendant or for his account. The evidence shows that no such action was contemplated by the parties. The defendant tendered the check in payment of the $300 demanded. The plaintiff

accepted the check and had it cashed at his own bank, paid Lyons for the watch and delivered it to the defendant.

The position of any of the parties to an illegal contract is a dangerous one. They are in a great measure without the protection of the law, and action of any sort is attended with risk.

The courts will refuse aid to the parties to such a contract either in the enforcement of the contract or in relieving them of the consequences of any act done in the course of its performance.

Had the plaintiff in this case taken the check to the bank on which it was drawn and got the money the payment would have been irrevocable. The defendant being a party to an illegal contract could not have recovered the money back, but when the plaintiff deposited the check in his own bank and paid his principals he took the chances of a revocation by the drawer of the check.

The fact that the plaintiff was an attorney-at-law does not alter the case. He has no better standing than any other agent in such a case. Weeks on Attorneys, S. 170.

The plaintiff has no higher rights than his principals. They could not sue on the check, and consequently he cannot. It follows from what has been said, that the defendant's first prayer must be granted.